IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DENNIS PFAFF,

        Plaintiff,                                CV-07-6097-ST

        v.                                        OPINION

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.

STEWART, Magistrate Judge:

        Plaintiff, Dennis Pfaff, challenges the Commissioner's decision denying his application for disability insurance benefits under Title II of the Social Security Act. The court has jurisdiction under 42 USC § 405(g). The parties consent to the jurisdiction of the Magistrate Judge to enter final orders and judgment in accordance with FRCP 73 and 28 USC § 636(c). For the following reasons, the Commissioner's decision is affirmed.

**BACKGROUND**

1 - OPINION

Pfaff was 60 years old at the alleged onset of disability and 64 years old when the ALJ issued his decision. He has a college education and work experience as a counselor of veterans with posttraumatic stress disorder ("PTSD"), office manager, vocational rehabilitation specialist and a veteran service officer. Pfaff last worked on May 23, 2003, as a counselor at a Department of Veterans Affairs ("VA") hospital.

In his application for disability insurance benefits, Pfaff alleged disability beginning February 1, 2003, due to PTSD, urinary frequency problems, back problems, hearing loss and obstructive sleep apnea. The administrative law judge ("ALJ") applied the five-step sequential disability determination process set forth in 20 CFR § 404.1520. *Bowen v. Yuckert*, 482 US 137, 140 (1987).

The ALJ found Pfaff had medically determinable impairments of hearing loss, obstructive sleep apnea, PTSD, dysthymia and a history of alcohol abuse. The ALJ assessed the limitations imposed by these impairments and found Pfaff remained capable of performing his past relevant work as an office manager. Thus, the ALJ concluded at step four of the decision-making process that Pfaff was not disabled within the meaning of the Social Security Act.

## STANDARD OF REVIEW

The court reviews the Commissioner's decision to ensure that proper legal standards were applied and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F3d 1190, 1193 (9th Cir 2004). The factual findings must be upheld if supported by inferences reasonably drawn from the record and if evidence supports more than one rational interpretation, the court must defer to the Commissioner's decision. *Id*; *Andrews v. Shalala*, 53 F3d 1035, 1039-40 (9th Cir 1995).

**DISCUSSION**

Pfaff argues that the ALJ improperly assessed his residual functional capacity ("RFC") and, therefore, improperly concluded that he is capable of doing his past work. The RFC is an assessment of the work-related activities a claimant can still do on a sustained, regular and continuing basis, despite the functional limitations imposed by his impairments. 20 CFR § 404.1545(a); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). The RFC assessment must be based on all the evidence in the case record, and the ALJ must consider all allegations of limitations and restrictions. SSR 96-8p, 1996 WL 374184 at * 5.

Pfaff asserts the ALJ erred by failing to properly consider his subjective complaints, the opinion of VA staff psychologist Peter Berman, Ph.D., and Pfaff's VA disability rating. Pfaff contends these errors produced an RFC assessment which did not accurately reflect his actual functional limitations and undermined the ALJ's conclusion that he is able to perform his past work.

**I.    Pfaff's Credibility**

Pfaff testified that he is unable to work due to poor concentration, organization and memory, mood lability, inability to control his emotions, intrusive thoughts and nightmares. He cannot control his anger or tolerate being told what to do and gets frustrated with coworkers. Tr. 595, 598, 603-05, 609, 613, 617, 618.[1]

The ALJ found Pfaff had the RFC "to perform unrestricted exertional activities with nonexertional limitations requiring avoidance of performing counseling functions and avoidance of background noise due to his hearing loss." Tr. 18. The ALJ accepted Pfaff's testimony that his work as a counselor to veterans triggered PTSD symptoms and some degree of the mental

---

[1] "Tr." refers to the official transcript of the administrative record (docket # 9).

limitations described in his testimony. However, he found Pfaff's "statements concerning the intensity, duration and limiting effects of those symptoms not entirely credible" with respect to his functional capacity when participating in appropriate treatment. Tr. 19. The ALJ discredited Pfaff's contention that his symptoms impose limitations that would preclude work in his former job as an office manager.

An ALJ must provide clear and convincing reasons for discrediting a claimant's testimony regarding the severity of his symptoms. *Dodrill v. Shalala*, 12 F3d 915, 918 (9th Cir 1993); *Smolen v. Chater*, 80 F3d 1273, 1284 (9th Cir 1996). The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995).

When making a credibility evaluation, the ALJ may consider objective medical evidence and the claimant's treatment history as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. *Smolen*, 80 F3d at 1284. The ALJ may also consider the claimant's daily activities, work record, the opinions of physicians and the observations of third parties in a position to have personal knowledge about the claimant's functional limitations. *Id.* In addition, the ALJ may employ ordinary techniques of credibility evaluation, such as the claimant's prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid. *Id*; SSR 96-7p, 1996 WL 374186 at *5-6.

The ALJ considered these factors in evaluating Pfaff's credibility. He observed that the "objective medical evidence does not fully support" the functional limitations Pfaff described. Tr. 19. On January 30, 2003, just prior to the alleged onset date, K. Johnson, Ph.D., found predominantly normal findings on a mental status examination, although Pfaff's mood appeared to

be depressed and anxious. Tr. 224-28. Based on those observations and Pfaff's subjective statements, Dr. Johnson diagnosed adjustment disorder with depressed mood and PTSD and assigned a global assessment of functioning ("GAF") score of 58-60. Tr. 227. A GAF in this range is used to indicate moderate difficulties in occupational functioning. *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 30-32 (4th ed. 1994).

On June 11, 2003, Pfaff was admitted to a VA Residential Rehabilitation Program for veterans with PTSD. Tr. 231, 241. Cristina Breiner, M.D., conducted an intake interview and obtained clinical findings within normal limits on her mental status examination. Tr. 238-40. Dr. Breiner diagnosed Pfaff with PTSD and depression and assigned a GAF of 50, indicating serious symptoms or serious functional limitations. Tr. 240; DSM-IV 32. Pfaff's symptoms improved steadily in the course of the program. On August 26, 2003, Julie Bonner, M.D., obtained normal clinical findings on a mental status examination (Tr. 310) and described Pfaff as "responding well" to antidepressant medications with his depression "significantly improved." Tr. 311.

On September 9, 2003, psychologist Dr. Berman interviewed Pfaff regarding his claim for an increase in his VA disability rating for PTSD. Tr. 323-26. Dr. Berman obtained generally normal findings on a mental status examination, but noted Pfaff's affect was flat and sad. Tr. 325. Dr. Berman did not perform diagnostic tests other than the interview. *Id*. He diagnosed Pfaff with PTSD with secondary depression and assessed a GAF of 48 to 50. Tr. 325-26.

On September 10, 2003, Dr. Bonner obtained normal clinical findings on a mental status examination, noting Pfaff's mood was euthymic. Tr. 308. Dr. Bonner found Pfaff's depression in remission, controlled by medication. Tr. 309. On September 12, 2003, Pfaff was discharged from

the residential program  Tr. 327.  In the Discharge Summary, Robert Jenkins, Ph.D., concluded that Pfaff was functioning well with symptoms controlled by medications.  Tr. 354-55.

After being discharged, Pfaff relocated from California to Oregon and had to reestablish care.  Tr. 355.  Beginning in October 2003, two VA nurse practitioners managed Pfaff's mental health care, which he sought for irritability and other depressive symptoms he associated with living with his mentally disabled brother-in-law and his father-in-law's failing health.  Tr. 369, 390.  After the brother-in-law moved to his own apartment in June 2004 and Pfaff began medication with Quetiapine, the treatment notes reflect excellent improvement and resolution of the depressive symptoms.  Tr. 517, 519, 520, 527-28.  Thereafter, the treating nurse practitioners assessed his GAF at 55, indicating moderate functional limitations.  Tr. 485.

The benign clinical observations and GAF scores suggest that Pfaff functioned well when he was receiving appropriate treatment.  Despite the brief relatively low period of situational depression associated with a temporary stressful living arrangement, the objective and clinical findings suggest Pfaff functioned at a high level when pursuing appropriate treatment and not engaged in counseling veterans.

The ALJ also found Pfaff's treatment history was "similarly not consistent with severely debilitating conditions."  Tr. 19.  Although Pfaff participated in residential treatment, the ALJ emphasized that this did not suggest he was unable to function independently.  Pfaff volunteered for the program and went home on weekends where he engaged in typical everyday activities.  *Id*.

Upon completion of the residential program in September 2003, Pfaff told Dr. Bonner that he "is doing very well, denies a depressed mood, [and] states that his energy is much improved."

Tr. 308. He had developed coping skills to manage his emotions during group therapy, and discharge recommendations included continued outpatient treatment with group therapy. Tr. 307.

After reestablishing care in Oregon in October 2003, Pfaff received repeated referrals for group therapy. Tr. 359, 369, 386. The record does not reflect Pfaff's participation in such a group until January 2005. Tr. 442. It is reasonable to conclude that Pfaff would have started group therapy sooner had his PTSD symptoms been as debilitating as he claimed.

The treatment history shows Pfaff's other conditions appear to be under control. His obstructive sleep apnea was treated successfully with a continuous positive airway pressure device and his hearing loss was treated with bilateral hearing aids and no longer considered an active medical problem. Tr. 353, 360, 403, 432.

The ALJ also found a "pattern of inconsistency" in Pfaff's subjective reports to different treating sources. Tr. 19. He noted the disparity in Pfaff's descriptions around the time he was discharged from the residential program particularly striking. *Id*.

On August 26, 2003, Pfaff told Dr. Bonner his mood was "up" and denied "feeling depressed anymore [*sic*]." Tr. 310. His sleep was "great" and his concentration was "better." *Id*. He was tolerating his medications and running several miles every morning. *Id*.

On September 9, 2003, when Dr. Berman interviewed Pfaff regarding his claim for an increase in his VA disability rating, Pfaff reported only "fair" sleep disrupted by nightmares, problems with memory and concentration, anger, irritability and depression. Tr. 325. However, the next day on September 10, 2003, Pfaff again reported to Dr. Bonner that he was doing very well, denied a depressed mood, and had a much improved energy level. Tr. 310. Dr. Bonner opined Pfaff's depressive symptoms were well controlled by medications. Tr. 308-09. At his discharge

7 - OPINION

evaluation on September 12, 2003, Dr. Jenkins, Ph.D., confirmed that Pfaff stated he "is doing very well, denies depressed mood, and states that his energy is much improved." Tr. 354.

Similarly, Pfaff's subjective reports were not entirely consistent with his testimony. Pfaff suggested in his testimony that his lack of emotional control, anger and frustration were ongoing throughout the period for which he claims disability. Contemporaneous treatment records show that he learned coping skills for these symptoms in the residential program. Tr. 352. After being discharged from that program, Pfaff reported difficulty controlling irritability and anger primarily in relation to a temporary stressful living arrangement. Tr. 367, 385-86, 390, 528.

After that temporary living arrangement resolved and Pfaff began a medication regimen including Quetiapine, episodes of irritability and anger essentially disappeared from Pfaff's subjective reports to treating sources. Instead, Pfaff reported he was doing well, without depression, anxiety, anger or episodes of road rage. He was getting good quality sleep without feeling sedated. Tr. 517, 520, 527-28.

The ALJ noted that Pfaff's active lifestyle was "similarly incongruous" with the debilitating symptoms described in his testimony. Tr. 19. Pfaff described traveling to Mexico for dental work and vacationing at Glacier Park in Canada. Tr. 527-28. He was talkative and described additional travel plans. Tr. 528. He hunted elk in Montana and purchased a home there to obtain a resident hunting license. Tr. 517, 519. He continued long distance running and traveled to Hawaii to participate in a marathon. Tr. 517. He remodeled a home to build a room for his brother in law. He independently managed these activities, relocations from California to Oregon to Nevada and the demands of his health care without problems. The ALJ could reasonably conclude that his active lifestyle was incongruous with the limitations he claimed.

The ALJ also believed Pfaff's work history did not support his assertion that he was incapable of working. Tr. 20. Pfaff has a long commendable history of employment. His PTSD became problematic only in his work as a counselor for veterans. Pfaff consistently reported his symptoms being triggered by his work as a counselor. Tr. 223, 230, 301, 326. Pfaff described counseling veterans as an unhealthy work environment for him, but claimed to be interested in seeking a non-counselor related job. Tr. 223. His treating sources at VA medical services opined that he should not return to such work, but did not mention other work restrictions. Tr. 231. The medical expert testified that his PTSD symptoms were not severe, except in the setting of his counseling job. Tr. 621-22. This evidence supports the ALJ's decision to discount Pfaff's suggestion that he cannot perform non-counseling work.

In deciding whether to accept Pfaff's subjective statements, the ALJ considered appropriate factors and reached conclusions that are supported by substantial evidence in the record. Pfaff argues that the evidence is also consistent with waxing and waning that is typical of psychological symptoms. Even if Pfaff is correct, where the evidence supports more than one rational interpretation, the court cannot disturb the Commissioner's decision. *Batson*, 359 F3d at 1193.

## II.    Dr. Berman's Disability Statement

As described previously, on September 9, 2003, Dr. Berman interviewed Pfaff to evaluate his claim for an increase in his VA disability rating. Tr. 323-26. In the concluding comments of his report, Dr. Berman wrote: "He will probably never be able to work again because of his PTSD." Tr. 326. The ALJ gave "little or no weight" to that statement. Tr. 20.

The question of whether a claimant is employable is not a medical opinion regarding the nature and severity of a claimant's impairments or the specific functional limitations they impose,

9 - OPINION

but an administrative finding reserved to the Commissioner. Such opinions must not be ignored, but cannot be given special significance. In evaluating the opinion of a medical source on an issue reserved to the Commissioner, the ALJ must consider whether the opinion is supported and consistent with the record as a whole, including factual findings of agency psychological consultants and opinions of medical experts based on the entire record. 20 CFR §§ 404.1527(d) & (e); SSR 96-5p, 1996 WL 374183 at *2-3 (July 2, 1996).

The ALJ did not ignore Dr. Berman's statement and did consider the appropriate factors. Despite Pfaff's argument to the contrary, the ALJ correctly described Dr. Berman as a non-treating source. Dr. Berman interviewed Pfaff on one occasion without reviewing his medical records, although he had access to certain unidentified notes. Tr. 323. He did not perform diagnostic testing and did not administer, prescribe or recommend treatment. Tr. 325-26.

Under these circumstances, the ALJ's conclusion that Dr. Berman "apparently relied quite heavily on the subjective report of symptoms and limitations provided by" Pfaff (Tr. 20), was a rational assessment. An ALJ is entitled to reject a medical source statement that is premised primarily on subjective complaints that the ALJ properly finds unreliable. *Tonapetyan v. Halter*, 242 F3d 1144, 1149 (9th Cir 2001). Because the record supports the ALJ in discounting Pfaff's credibility, he could also discredit Dr. Berman's statement which was premised on Pfaff's subjective complaints.

In addition, the ALJ found Dr. Berman's statement inconsistent with the record as a whole. Within days of Dr. Berman's statement, Drs. Bonner and Jenkins found Pfaff's depressive symptoms in remission, and his energy, concentration and sleep quality improved. Tr. 308-09, 354-55. Other treating sources at the residential program, including his psychiatrist and program supervisor, opined

that his future employment should not include work in patient care at a VA center, but notably omitted any other work restrictions. Tr. 231. The ALJ could reasonably find these opinions inconsistent with Dr. Berman's contemporaneous statement suggesting Pfaff would be unable to work in any capacity. In addition, the ALJ found inconsistent the fact that no treating source in the record had suggested work restrictions, other than avoidance of counseling duties. Tr. 21.

Instead of Dr. Berman's disability opinion, the ALJ adopted the opinion of Susan Dragovich, Ph.D., who testified as a medical expert at the hearing. Tr. 20. The opinions of reviewing psychological consultants and medical experts may be entitled to greater weight than the opinion of an examining source in appropriate circumstances. SSR 96-6p, 1996 WL 374180 at *3 (July 2, 1996). For example, where the opinion of a state agency consulting psychologist or medical expert opinion is based on a complete case record, it may be given greater weight than the opinion of an examining source based on limited information. *Id.*

The ALJ found that Dr. Dragovich was "the only medical source who reviewed the entire record" and "considered [Pfaff's] VA records and rating, as well as [Pfaff's] testimony at the hearing." Tr. 20. He gave her opinion the greatest weight because it had a "better foundation" than any other source, including Dr. Berman. *Id*. Dr. Dragovich opined that the only work limitation supported by the record would be "restricted from working with combat veterans or veterans in a counseling position." Tr. 622. The ALJ also gave significant weight to the assessment of the agency reviewing psychologists who found Pfaff only mildly limited with respect to work-related activities. Tr. 20, 418, 420.

In sum, the ALJ did not ignore Dr. Berman's disability statement, but, after giving due consideration to appropriate factors, found his statement unsupported and inconsistent with the

11 - OPINION

record as a whole.  He gave greater weight to the findings and opinions of other sources who had greater information and whose opinions were consistent with the record.  This was not error.

### III.  The VA Disability Rating

In a rating decision issued November 25, 2003, the VA approved Pfaff's claim to increase his disability rating for PTSD from 30 percent to 50 percent, effective January 17, 2003.  Tr. 74.  The ALJ determined that the VA disability rating was entitled to "little weight."  Tr. 20.  Pfaff argues the ALJ erred by giving insufficient weight to the VA rating.

A determination that a claimant is disabled, made by another agency under its own rules, is not binding on the Commissioner.  20 CFR § 404.1504.  An ALJ must consider a VA finding on the issue of disability, and in appropriate cases should give it "great weight."  *McCartey v. Massanari*, 298 F3d 1072, 1076 (9th Cir 2002).  "Because the VA and SSA criteria for determining disability are not identical, however, the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record."  *Id*.

Here the ALJ properly considered the VA disability rating of 50 percent and provided specific, persuasive reasons for not giving it greater weight.  The VA rating was based on Dr. Berman's interview which the ALJ found unsupported and inconsistent with the record as a whole, as discussed previously.  Tr. 20-21, 75.

The ALJ found the VA rating decision did not appear to factor in Pfaff's ability to perform work-related functions as required by Social Security regulations.  Tr. 20.  The VA rating decision indicated that an evaluation of 50 percent disability may be attributable to such symptoms as flattened affect, stereotyped speech and disturbances of motivation, among others.  Tr. 75.  Social Security regulations require limitations in specific work-related functions.  *See* 20 CFR § 1521(b).

The VA rating decision indicated that a higher evaluation than 50 percent was not warranted because Pfaff did not have "deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood." Tr. 75. The 50 percent rating also contemplated that Pfaff retained the ability to engage in work, noting his right to claim total disability "[i]f you believe you are unable to obtain or follow a substantially gainful employment." Tr. 76.

The VA rating decision did not include any consideration of Pfaff's ability to perform his past relevant work as an office manager. Under Social Security regulations, a person who can perform past relevant work must be found not disabled. 20 CFR § 1520(f); SSR 96-8p, 1996 WL 374184 at *3-4.

The ALJ's reasons for discounting Pfaff's credibility are also persuasive on this issue. Treating sources found Pfaff functioning well at the same time Dr. Berman opined he would not be able to work. Later treatment records not considered in the VA rating decision showed continued improvement. His extensive activities also support the ALJ's decision to discount the VA rating. In addition, Pfaff worked successfully until May 23, 2003, four months after the effective date of the VA rating decision.

In sum, the ALJ considered the VA disability rating decision and provided specific, persuasive reasons for not giving it greater weight. Accordingly, the court finds no error in the ALJ's evaluation of that evidence. *McCartey*, 298 F3d at 1076.

///

///

## **CONCLUSION**

The ALJ applied proper legal standards and his findings are supported by substantial evidence. Thus, the Commissioner's final decision is AFFIRMED.

DATED this 12th day of February, 2008.

/s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge